JOHN T. MCMICHAEL, APPELLANT, VS. JAMES A. GRADY, SHERIFF ET AL., APPELLEES.

HOMESTEAD EXEMPTION—EQUITY JURISDICTION OVER—WAIVER OF EXEMPTION RIGHT—COURT COMMISSIONER'S POWER TO GRANT IN-JUNCTION—INJUNCTION WITHOUT BOND.

1. Under Chapter 3246, laws approved March 7th, 1881, entitled "An Act to Enlarge the Equity Jurisdiction of the Circuit Courts," our courts of equity are clothed with full and complete juris-diction over the matter of the homestead and exemptions al-lowed by the Constitution and laws; not only to adjudicate as to the rights of parties thereto, but to control and direct the setting apart and allotment thereof; and to restrain interference therewith or sale thereof under any inhibited process of law; and to pass upon and adjudicate the propriety of any exception set apart by any officer, and to rectify it if im-proper.

2. Where personal property that is exempt from forced sale to the head of a family under our Constitution is simply *levied upon* by attachment or other process of law, the mere silence or failure of the party entitled to such exemption to assert or claim it, until there is an *actual attempt at forced sale* of such property under the process of some court, can not constitute a *waiver* of the right or work an estoppel to its assertion when the inhibited *forced sale* is actually at-tempted.

3. During the absence of the Circuit Judge from the county where the bill is pending, court commissioners, appointed under the provisions of our Constitution, have the authority to grant an injunction *in any cause* in which a Circuit Judge could have granted it if present.

4. Under our statute, where summary process by injunction is prayed, and the bill justifies it, and affidavit shall be made of the truth of the statements of the bill, and that the complain-ant is unable to give bond of indemnity or other security, if the statements of the bill and accompanying affidavit shall appear by *ex parte* evidence to be true to the Chancellor or Court Com-missioner to whom the application is made, it is not error to grant the injunction *without bond*.

Appeal from the Circuit Court for Pasco county.

The facts in the case are stated in the opinion of the court.

*R. W. Williams* for Appellant.

*Sparkman & Sparkman* and *John B. Johnston* for Appellees.

TAYLOR, J.:

John T. McMichael, the appellant, on the 6th day of January, 1890, filed his bill in equity in the Circuit Court of Pasco county against James A. Grady as Sheriff of said county and against the firms of Eckman and Vetsburg, Frank and Company, Joseph Rosenheim and Company, Meinhard Brothers and Company, Hexter and Kohn, A. Einstein Sons, Einstein and Lehman, and A. R. McCowan and Company, alleging therein that on the 5th of December, 1889, the defendants, the above named firms, obtained final judgments against him, in sundry suits in assumpsit with ancillary attachments. That on the 21st day of December, 1889, the said defendants upon an affidavit, averring that the stock of goods that had been levied upon by virtue of the attachments in said suits was of a perishable nature, obtained an order at law from the Circuit Judge for the sale of said goods. That under said order the defendant Grady as Sheriff of Pasco county has duly advertised the said stock of goods for sale on the 6th day of January, 1890. Copy of the Sheriff's advertisement is attached as an exhibit to the bill. That he is the head of a family residing in this State. That his family consists of himself, wife and two small children. That as such head of a family he is entitled to the constitutional exemption of one thousand dol-

lars worth of personal property from forced sale under process of any court. That he has never had the benefit or availed himself of said constitutional provision. That subsequent to the levy of said writs of attachment and executions on his property as aforesaid by the defendant Grady, as sheriff, your orator notified the defendant Grady, in his official capacity as sheriff in custody and control of your orator's property, in writing and in person, that your orator desired to avail himself of his right to exempt one thousand dollars worth of the property .levied upon, or so much as might be necessary to enable him to avail himself of the benefit of said constitutional exemption. That said Grady refused to comply with your orators desire, and your orator again on the 2nd day of January, A. D. 1890, served a written notice on said defendant Grady as such sheriff of his desire to avail himself of his right to exempt one thousand dollars worth of personal property from forced sale, and offering then to point out all of his property and desiring the said Grady as sheriff to make an inventory of the same that orator might make oath to its containing a true and perfect list of all his personal property, so that appraisers might be appointed to appraise same at its cash value, in order that orator might select from such inventory of personal property an amount, according to such appraisal, not exceeding one thousand dollars, and exempt the same from forced sale under process of any court and especially from the sale under the said order of this court made on the law side thereof advertised to take place on the 6th of January, 1890, under executions in favor of the defendants, the said firms aforesaid. And your orator charges that the plaintiffs in said executions who are the defendants named in this bill have no specific lien upon the prop-

erty which your orator is entitled to have exempted to him. A copy of the demand upon Grady as sheriff is attached as a part of and as an exhibit to the bill, and is as follows: "To James A. Grady, Sheriff of Pasco county, State of Florida: I desire you to make an inventory of all of my personal property and am now ready to point out the whole of my personal property to you, so that you make an inventory, and to make oath that said inventory when taken contains a true and perfect list of all of my personal property, so that appraisers may be appointed to appraise the same at its cash value in order that I may select from such an inventory an amount of such property, according to such appraisal, not exceeding one thousand dollars, which I claim and desire to be exempt from forced sale under the laws of this State and especially from sale under executions in favor of Eckman and Vetsburg *et al.* against myself as advertised by you to take place on 6th day of January, A. D. 1890. John T. McMichael." That the said Grady as sheriff, combining and confederating with the other defendants herein, with the intent to deprive your orator of his constitutional right to an exemption, and knowing full well that your Honor is now absent from Pasco county on the circuit in Monroe county in the city of Key West, some hundreds of miles from railroad communication, so that no order could be obtained of benefit to your orator to compel him as such sheriff to set apart your orator's exemption and desist from the sale of same, and taking advantage of the order of sale made by your Honor, wherein it is ordered that he as sheriff do pay over the proceeds of said sale to be had on January 6th, 1890, to the said plaintiffs in execution, has absolutely refused to entertain any of your orator's requests or demands that he comply with orator's desire to have

,exempted to him one thousand dollars worth of personal property and have the same selected and set apart to him out of the goods levied on described in the advertisement of sale heretofore referred to as exhibit "A," before said sale should take place, in utter disregard of your orator's right as the head of a family in the premises. That if said sale advertised to be made by said sheriff on January 6th, 1890, is allowed to take place it will of itself operate to defeat your orator's constitutional exemption, as said order of sale is for the sale of a certain stock of goods, wares and general merchandise consisting of clothing, boots and shoes, hats, millinery, dry-goods, etc., levied upon as the property of your orator to satisfy executions in favor of the other defendants herein specified. The said sale is to be for cash and the proceeds of sale are to be paid over to the said defendants who are named as plaintiffs in said executions. That said property so advertised for sale is about all of the personal property now owned by your orator in the State of Florida, and if that property is sold then there will none be left from which to select an exemption, and your orator can not exempt the proceeds of the sale of same, because it is ordered to be paid over to the defendants above named as plaintiffs in said executions, and owing to the absence of your Honor in Key West as aforesaid the proceeds of said sale would be in their hands before any order could be obtained to stay the same in the hands of the defendant Grady as sheriff, or to pay the same into the registry of the court, and the injury would be irreparable as all of said defendants, the plaintiffs in said execution, are non-residents of this State.

The bill prays that the defendants be restrained and ,enjoined from selling or offering for sale the property

levied upon and advertised to be sold on the 6th day of January, A. D. 1890, until after your orator be allowed to select and have set apart to him from sale an amount not exceeding one thousand dollars worth of personal property as exempt from levy and sale under process of any court and particularly from sale under the said executions in favor of the defendants especially as your orator alleges and charges that said defendants have established no specific lien upon any of said property for the purchase money of the same. There is a prayer also for general relief. Said bill was verified by the oath of the complainant, in which oath he further swore that he was unable to give bond of indemnity or other security upon the granting of the restraining order prayed for.

On the 6th day of January, 1890, the day the bill was filed, a court commissioner for Pasco county made an order in said cause restraining the said sheriff from selling the personal property of the complainant advertised to be sold on January 6th, 1890, until one thousand dollars of said personal property shall be set apart and delivered to the said complainant as the exemption to which he is entitled under the Constitution and laws of Florida, but it was stipulated in the order that it should not be construed so as to delay the sale of other property advertised to be sold on said day, but on the contrary that the said personal property claimed to be exempt shall be scheduled by him immediately upon the issuance of said order, the appraisal thereof as the law directs shall be had without delay, and that the sale of the other property not included in that exempted should proceed as advertised. The property so selected and appraised as the exemption was further ordered to remain in the custody of

said sheriff until the further order of the Circuit Court.

The defendants in said bill gave notice on the 13th of January, 1890, that on the 14th day of that month they would move before the Circuit Judge at his office at Bartow, Fla., to reverse and vacate the order made in said cause by said court commissioner and for an order dismissing the bill upon the following grounds: 1st. That said court commissioner did not have the power to make the order he made, nor any order in the premises. 2nd. That there is no equity in the bill. 3rd. That said property was not exempt under the exemption laws of the State nor any part thereof. 4th. That if said property ever had been exempt that said McMichael had waived his right to said exemption. 5th. That no bond was filed as the law requires to indemnify plaintiffs in execution, nor had the said McMichael paid the costs in the proceedings. 6th. And for other good and sufficient reasons apparent upon said proceedings.

This motion came on to be heard on the 15th of January, 1890, and the Circuit Judge then made an order sustaining said motion, and vacated the said injunction order and dismissed the bill. From this order the complainant McMichael appeals. The court below erred in granting this order, particularly to the extent that it goes of dismissing the complainant's bill. As to the first ground of the motion upon which the order appealed from was made, we think the court commissioner transcended his power in the matter of ordering an appraisement and scheduling of the property claimed to be exempt. His only power in the premises was to grant an injunctional order restraining the sale of so much of the property levied upon and advertised

to be sold as was exempted to the complainant from forced sale. Beyond this he had no authority to go; but that he, as such court commissioner, did have the authority, during the absence from the county of the Circuit Judge, to grant a writ of injunction *in any cause* in which a Circuit Judge, if present, could have granted such writ, there can be no question under the provisions of Section 14, of Article 5 of the Constitution of 1885.

The second ground of said motion should properly have been set up in the form of a demurrer to the bill, but as the Circuit Judge must have considered the same in making the order of dismissal of the bill, we also will treat it, in consideration of the question it presents, as being tantamount to a demurrer to the bill. We can not agree that there is no equity in the complainant's bill. Ordinarily a court of equity would have no jurisdiction to entertain a bill predicated upon the facts set up in this bill, and praying the relief therein sought; but by Chapter 3246 laws, approved March 7th, 1881, entitled "An Act to Enlarge the Equity Jurisdiction of the Circuit Courts," the jurisdiction in equity is expressly conferred upon the Circuit Courts and the judges thereof, upon bill filed, to enjoin and restrain the sale of all property, real or personal, that is exempt from forced sale, under the Constitution and laws of this State; and, by Section two of that act, said courts are further clothed with jurisdiction in equity, upon bill filed, to order, adjudge and decree the setting aside the homestead, and exemptions of personal property from forced sale under said Constitution and laws. And, by Section three of the same act, said courts are further given jurisdiction in equity, upon bill filed, to enjoin and restrain a sheriff or other officer from setting aside

real or personal property as exempt from forced sale, when the same is not exempt; and to adjudge and decree the vacation, and to annul all exemptions made and set aside by any sheriff or other officer, when the same has been illegally and improperly made; and to order the sale of the same, or so much thereof as it may be legal, equitable and proper to be sold. Thus giving to our courts of equity full and complete jurisdiction over the matter of homesteads and exemptions, not only to adjudicate as to the right of the party thereto, but to control and direct the setting apart thereof, and to restrain interference therewith by any inhibited process of law; and to pass upon and adjudicate the propriety of any exemption set apart by any officer, and to rectify it if improper.

The bill here makes out a *prima facie* case entitling the complainant to an exemption of one thousand dollars worth of the property levied upon and advertised to be sold by the defendant sheriff under the executions in favor of the other defendants, from forced sale under said processes of law; and the case, as made by the bill, entitles the complainant to the interposition of a court of equity, not only to restrain the alleged threatened sale of property claimed to be exempt, but to pass upon and adjudicate his right to such exemption out of the particular property claimed to be exempt; and, if he be found to be entitled to have the same exempted to him, then to order and direct the allotment thereof to him. If there was anything that disentitled him to an exemption out of this particular property, the court, in the exercise of its equity jurisdiction, could have so declared; but the facts that would have defeated such exemption right therein, should have been set up in the orderly way, by answer to his bill, and duly sustained by proofs, and not left to surmise

upon a bare motion unsupported by proofs, as was done here. The third ground of said motion, to the effect, that said property was not exempt under the exemption laws nor any part thereof, is a traverse of a material fact alleged in the complainant's bill, and is not a proper ground of assault by motion upon a bill in equity, but should be set up and urged by answer, and sustained by formal proof. Upon a motion of the kind made here this ground could not and should not have been entertained or considered, unless the bill upon its face, by its own allegations, had shown that the property claimed therein to be exempt, was not in law subject to such exemption.

Under the fourth ground of the motion it is urged here that if the complainant ever was entitled to an exemption out of this property he has waived his right thereto, as shown by his bill, because the property had been seized by attachment writs in said suits some time prior to the rendition of final judgments in such suits, and that the complainant should have interposed his claim to exemption out of said property promptly after the levy of said attachments; that by waiting to assert his right until after said attachments had been merged into final judgments, and until after the court by its order had directed a sale of the property to satisfy such judgments, he had waived his right. In support of this proposition we are cited to the cases of Harlan vs. Haines, 125 Pa. St., 48, and Stanton vs. French, 83 Cal., 194, and State vs. Manley, 15 Ind., 8, cited by Thompson in his work on Homestead Exemptions to sustain the text of Section 826. In the latter case from Indiana it is held that after the court has rendered final judgment for the sale of property attached it is too late for the defendant to claim it as exempt; but it is also held that the defendant has

the right there to set up his claim to the exemption as a *defense* to the attachment. The exemption claimed there was under a statutory provision, and court the in that case treats the final judgment rendered in the attachment suit as being *res adjudicata* of the defendant's *right to the exemption* out of the property attached. By not setting up his claim to the exemption before the trial of the attachment suit, in which he could have made his right thereto *an issue*, he is held to have *waived the right*. In the California case the party claiming the exemption waited in silence until the officer had sold his property, claimed as exempt, under a judgment and execution against him, and after the sale sued the officer for the value of the property sold. The court there holds that: "While the law exempts certain property of a judgment debtor from execution and forced sale, such exemption is a personal privilege, which may be waived by the debtor, and a failure to claim the property as exempt, when levied on to satisfy a judgment against him, within a reasonable time thereafter, is a waiver of the exemption right, and the officer selling exempt property without such claim of exemption, is not liable for the value thereof." The Pennsylvania case rested upon a statute giving the right of exemption. In that case the court says: "The exemption statute of April 9th, 1849, is not self-executing. It extends a privilege to the debtor which he may claim or waive, and it is operative only on his demand. In connection with the privilege it confers on the debtor, is the duty which rests on him of promptly claiming it. When a debtor has notice of the seizure of his property on execution process, he must, without unnecessary delay, claim his exemption or he will lose it. It is a right which may

be defeated by his laches, or may be protected by his vigilence."

In so far as these decisions may be pertinent to the question under discussion, they can not be applied to the exemption provisions of our Constitution and laws.

Our Constitution does not contemplate that the *right to the exemption* that it gives shall be adjudi- cated and passed upon *as an issue* in any proceeding instituted to enforce a debt or to put a debt into the form of a judgment, but shields the property it ex- empts '*from forced sale under the process of any court.*' Its inhibitory hand is not actively lifted until a *forced sale under the process* of some court is at- tempted. When such sale is attempted then, no mat- ter *when* it may be, the party clothed with the right, can call upon the proper courts to apply the shield that the Constitution guarantees to him. That he may waive the right of action that he might have against an officer to damages for a wrongful sale of exempt property, by standing idly by, without protest, until after the sale was made, we are not prepared, nor are we called upon now to decide; but we are satisfied that there can be no waiver of the constitutional right by a failure to assert or claim it until the forced sale is ordered or attempted that is inhibited by the organic law. In the case of Carter's Administrators vs. Car- ter *et al.*, 20 Fla., 558, this court has expressly repu- diated the doctrine of the Pennsylvania cases, and has ranged itself on the side of those courts that hold that a party entitled to the benefit of the exemption can not waive it by an express agreement to that effect con- tained in a promissory note. That such an agreement in a promissory note is inoperative as against the policy of the exemption laws. The decision of the

court in that case is put upon the ground that: "The object of exemption laws is to protect people of limited means and *their families* in the enjoyment of so much property as may be necessary to prevent absolute pauperism and want, and against the consequence of ill-advised promises which their lack of judgment and discretion may have led them to make, or which they may have been induced to enter into by the persuasions of others." In that case it was also held that, when property which may be claimed as exempt from the satisfaction of debts has been sold or converted into funds by administrators, the heirs entitled may claim the value out of the funds in the hands of the administrators.

If a party entitled to the exemption can not waive it by *express agreement* in a promissory note, founded on a valuable consideration, because his family have an interest in it, and because it would be against the policy of the law thus to allow him to defeat the protection that is designed for his family, it would seem to follow as a corollary that he could not effect such a waiver by parol declarations or by mere negative silence, or failure to act; or, as Thompson puts it in his work on Homestead Exemptions, Section 823: "A right which I can not part with by express contract, because it is only in part mine, I can not, for the same reason, lose by estoppel in consequence of my own act or failure to act."

The fifth ground of the motion was that the injunction was improperly granted without any bond of indemnity being required from the complainant to the defendant. The act of February 14th, 1861, Chapter 1098, Section 19, page 158, McClellan's Digest, expressly provides that in all suits in equity, where summary process by injunction is prayed, and the bill jus-

tifies such process, and affidavit shall be made of the truth of the statements of the bill, and that the complainant is unable to give bond of indemnity or other security, the chancellor shall receive *ex parte* evidence of the truth of the statements of the bill and of the accompanying affidavit, and if they shall appear to be true, shall grant such process without requiring security. Thompson vs. Maxwell, 16 Fla., 773.

The complainant, in the verification of his bill, complies with the requirements of this provision of the law, therefore, there was no impropriety in the granting of the injunction on the ground of the absence of a bond.

The court below was in error in dissolving the injunction upon the showing made on the motion for that purpose, and was clearly in error in ordering a dismissal of the plaintiff's bill. The bill made a case on the complainant's behalf that *prima facie* entitled him to the relief prayed at the hands of the court, and required an answer in due form to overcome it. The complainant upon the showing made, was entitled to be heard with his proofs, and it was error to dismiss him from the court in a fashion so summary and unceremonious.

The decree appealed from is reversed with directions to reinstate the injunctional feature of the order made by the court commissioner.